IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

B.K.T., *by and through her parents and next friends*, MATTHEW W. TAYLOR and GENTRY K. TAYLOR,

        *Plaintiffs,*

vs.

Case No. 21-1217-EFM

UNIFIED SCHOOL DISTRICT NO. 259,

        *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiffs Matthew W. Taylor and Gentry K. Taylor bring this lawsuit on behalf of their minor daughter, B.K.T. Plaintiffs assert claims under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") alleging that Defendant discriminated against B.K.T. by failing to accommodate her disability, effectively excluding her from an education. Before the Court is Defendant Unified School District No. 259's ("USD 259") Motion to Dismiss (Doc. 8). Defendant contends that this Court does not have subject matter jurisdiction and that Plaintiff has failed to state a claim for which relief can be granted. For the reasons stated herein, the Court grants Defendant's motion.

I.      **Factual and Procedural Background**[1]

B.K.T. and her parents reside in Sedgwick County, Kansas. B.K.T. has been diagnosed with microcephaly, severe intellectual disability, and autism. These disabilities manifest in cognitive, motor, behavioral, and communicative deficits which impact all academic and nonacademic areas of her life. Additionally, she must wear a diaper. Her disabilities satisfy the disability definitions in the Individuals with Disabilities Education Act ("IDEA"), the ADA, and Section 504.

B.K.T. has been on an individualized education plan ("IEP") since she was first enrolled in school. An IEP outlines the current level of a child's academic achievement, how disabilities affect their performance in class, and what services and supplementary aids will be provided for them to learn effectively. An IEP is crafted by an "IEP Team." An IEP Team often consists of educators, parents or guardians, and representatives of the local educational agency. B.K.T.'s IEP provides she receive direct individualized instruction, extensive scholastic support, and constant physical monitoring. It also establishes that her diaper be checked regularly, and that she is taken to the restroom at the end of each school day. Her IEP was created at her previous school in Virginia and adopted by USD 259 in the spring of 2019 upon her enrollment at Wilbur Middle School. B.K.T. began attending Wichita Northwest High School ("Northwest") that fall.

Classes at Northwest began August 14, 2019, but by October 3, 2019, B.K.T. was disenrolled. During the first two weeks of the school year, B.K.T was sent home with wet diapers

---

[1] The facts are taken from Plaintiffs' Complaint and are viewed in the light most favorable to them.

on five occasions and once left unattended in the school's pick-up zone. B.K.T.'s mother spoke with Ms. Firestone, B.K.T.'s teacher, who made assurances that the problems would be addressed.

During the third week, B.K.T. left school with a soiled diaper and a "paper-towel shoved into her vagina." Ms. Firestone told the Taylors that B.K.T. had locked herself in the bathroom that day, and it must have happened then. At that time, Mr. Taylor expressed concern to Ms. Firestone that Northwest might not be capable of providing services for his daughter. Ms. Firestone assured him that she would resolve the issues.

On September 9, 2019, after the school day, Mrs. Taylor discovered a hole in B.K.T.'s diaper, dried blood along B.K.T.'s legs, and a bruise near B.K.T.'s vagina. She was taken to the hospital, given a rape kit, and the police were contacted. Mr. Taylor spoke with Principal Eric Hofer-Holdeman and requested an emergency IEP meeting; it was scheduled for the next week.

At that meeting, the Taylors were told by Principal Hofer-Holdeman that on September 9, B.K.T. and one other student were watched by special education teacher, Mr. Wesley Nuckolls, and that B.K.T. might have injured herself with scissors. Principal Hofer-Holdeman assured the Taylors that B.K.T.'s IEP would immediately be fixed. Two days later, Mr. Taylor was told by the principal that paraprofessionals had not been taking B.K.T. to the restroom as often as care logs indicated. Principal Hofer-Holdeman initiated an investigation. The investigation found the school had "done nothing wrong," that B.K.T.'s diaper was dry all day on the ninth, and that the blood would have been seen sooner assuming the injury occurred at school.

After the incident on the ninth, B.K.T. began to exhibit amplified anxiety, amplified anger, an aversion to being touched, and difficulty sleeping. These changes prompted the Taylors to take B.K.T. to a mental health clinic; she was found to be exhibiting signs of post-traumatic stress

disorder and placed on antidepressants. On October 3, 2019, the Taylors disenrolled B.K.T. from USD 259 without requesting any further administrative hearings.

Plaintiffs contend: (1) USD 259 failed to accommodate the needs of B.K.T. and that this failure ultimately resulted in injury and psychological trauma to her; (2) USD 259 compounded the trauma by determining the fault lay with their daughter rather than the failure of USD 259 to follow the IEP; (3) failure to follow the IEP excluded their daughter from receiving a free appropriate public education ("FAPE"); and (4) failure to provide a FAPE is discriminatory and thus a violation of the ADA and Section 504. They seek monetary damages as relief. USD 259 moves to dismiss, alleging that this Court lacks subject matter jurisdiction. It argues the Complaint alleges denial of a FAPE, and that any complaint alleging such a denial must exhaust the IDEA administrative process before suit can be brought. In the alternative, USD 259 moves to dismiss for failure to state a claim.

## II.     Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal based on a court's lack of subject matter jurisdiction.[2] Subject matter jurisdiction is a Constitutional and statutory requirement for federal courts.[3] As such, parties cannot confer subject matter jurisdiction onto federal courts or waive the subject matter jurisdiction requirement.[4] Because federal courts are courts of limited jurisdiction, the presumption is against federal jurisdiction.[5] "A court lacking jurisdiction cannot render judgment but must dismiss the

---

[2] Fed. R. Civ. P. 12(b)(1).

[3] *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[4] *Id.*

[5] *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999) (citation omitted).

cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking."[6] Generally, a rule 12(b)(1) motion takes one of two forms: a facial attack or a factual attack.[7] "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[8] This motion involves a facial attack, and therefore, this Court must view the factual allegations in the Complaint as true. The burden of establishing jurisdiction rests with the party making the claim.[9]

### III.  Analysis

The Individuals with Disabilities Education Act as amended has the purpose of increasing the availability and efficacy of education for children with disabilities.[10] The IDEA provides federal funds to states in exchange for a commitment that the states will furnish a FAPE to all children with certain physical or intellectual disabilities.[11] When a state accepts funding under the IDEA, an eligible child acquires a substantive right to a FAPE.[12] If a state fails to provide a FAPE, the IDEA requires plaintiffs to exhaust administrative procedures before civil suit can be brought in federal court.[13] Often, a suit brought under the IDEA could also be brought under Title II of the

---

[6] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citing *Bradbury v. Dennis*, 310 F.2d 73 (10th Cir. 1962)).

[7] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

[8] *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

[9] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).

[10] 20 U.S.C. § 1400(d).

[11] *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). For a list of what qualifies as a disability for purposes of the IDEA, see 20 U.S.C. § 1401(3).

[12] *See Fry*, 137 S. Ct. at 749 (citing *Smith v. Robinson*, 468 U.S. 992, 1010 (1984)).

[13] 20 U.S.C. § 1415(*l*).

ADA,[14] or Section 504 of the Rehabilitation Act of 1973.[15]  However, if suit is brought under the ADA or Section 504 for "relief that is also available under" the IDEA, then a plaintiff is still required to exhaust the IDEA's administrative procedures.[16]  These procedures provide parents or guardians who disagree with the actions of a school regarding their child's access to a FAPE the right to an impartial due process hearing.[17]  The parents then have the right to appeal.[18]

The parties here agree that Plaintiffs did not exhaust IDEA procedures, but they disagree as to whether the relief sought is relief that is also available under the IDEA.  The Taylors assert USD 259 discriminated against B.K.T. because—by not following the IEP—B.K.T. was denied a safe school environment and thus excluded from a public entity receiving federal financial assistance.  USD 259, on the other hand, asserts the heart of the Complaint is the denial of a FAPE to B.K.T., and therefore relief is available under the IDEA.  If USD 259's assertion is correct, then the Taylors would need to exhaust the IDEA administrative procedures before suit could be brought.

After a review of the record and relevant case law, this Court finds that the heart of the Complaint alleges denial of a FAPE.  Further, because Plaintiffs have not exhausted the IDEA administrative process, this Court lacks subject matter jurisdiction over Plaintiffs' claims. This Court therefore need not conduct further analysis on whether Plaintiffs have failed to state a claim.

---

[14] 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

[15] 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .").

[16] *Fry*, 137 S. Ct. at 750 (quoting 20 U.S.C. § 1415(*l*)).

[17] 20 U.S.C. § 1415(f).

[18] 20 U.S.C. § 1415(g).

**A.     The Heart of Plaintiffs' Complaint Alleges Denial of a FAPE**

A suit seeking relief available under the IDEA must first exhaust the IDEA's administrative procedures.[19] The only relief available under the IDEA is relief for denial of a FAPE.[20] "[I]n determining whether a suit 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint."[21] This inquiry is not formalist; it does not hinge on whether or not a complaint mentions "FAPE" or "IEP."[22] The Supreme Court in *Fry v. Napoleon Community Schools* created a two-part test for courts to ascertain whether the heart of a complaint concerns the denial of a FAPE or concerns non-educational, but disability-based, discrimination protected under the ADA.[23] First, could the plaintiff bring the same claim if the alleged conduct occurred at a different public facility?[24] "[S]econd, could an *adult* at the school—say, an employee or visitor"—bring the same claim?[25] When the complaint's claims could not be brought in these two scenarios, then the heart of the complaint likely concerns a FAPE.[26] In applying the test, the conduct to be applied is the specific harm alleged, such as a student being denied a math tutorial.[27]

In *Fry*, the Court considered whether the complaint concerned denial of a FAPE. There, parents disagreed with a school as to whether their daughter's service dog should assist her

---

[19] 20 U.S.C. § 1415(*l*); *see also A.P., IV by Porco v. Lewis Palmer Sch. Dist. No. 38*, 728 Fed. App'x 835, 838 (10th Cir. 2018).

[20] *Fry*, 137 S. Ct. at 754-55.

[21] *Id.* at 752.

[22] *Id.* at 755.

[23] *Id.* at 756.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 756–57.

throughout the school day. The parents brought suit—without exhausting IDEA procedures—alleging disability discrimination under the ADA and Section 504. The school argued this was a disagreement as to the girl's IEP, and therefore the IDEA exhaustion requirement barred the lawsuit. Applying the test, the Court first found that denying a child their service dog at a public library could be grounds for suit under the ADA or Section 504. And second, it found that denying an adult a service dog at the school could be grounds for suit as well. The Court held the heart of the complaint did not concern denial of a FAPE. Thus, exhaustion was not required.

As demonstrated in *Fry*, not all cases brought against schools that allege a failure to accommodate disabled children require exhaustion under the IDEA. This Court held similarly in *Barr v. Sedgwick County Area Educational Coop. #618* that when a disabled child at school was struck in the face, improperly restrained, and locked in a bathroom, the plaintiffs did not need to exhaust the administrative process of the IDEA.[28] The Tenth Circuit likewise held in *Muskrat v. Deer Creek Public Schools* that when a disabled child at school was slapped on the cheek and arm, and was improperly restrained, exhaustion was not required.[29]

Applying the *Fry* analysis here, this Court concludes that the allegations in the Complaint are not comparable to *Fry*, *Barr*, or *Muskrat*; rather, the Complaint concerns denial of a FAPE. The specific harm the Complaint alleges is that B.K.T. was sent home from school in soiled diapers, allowed to walk in the pick-up zone unaccompanied, and—while not under constant supervision—allowed to injure herself or be injured by others. The Court first finds that were B.K.T. to leave a public library with a soiled diaper, enter the parking lot, and then injure herself,

---

[28] *Barr v. Sedgwick Cnty. Area Educ. Servs. Interlocal Coop. #618*, 2020 WL 5572692, at *5 (D. Kan. 2020).

[29] *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 785 (10th Cir. 2013).

there would be no claim against the library. The library would not have a responsibility to avoid these harms to B.K.T. under the ADA or Section 504. Second, were an adult to leave the school with a soiled diaper, enter a dangerous parking lot, and injure themselves, there would likewise be no ADA or Section 504 claim against the school. It is only because of the IEP that the school has the responsibility to avoid these specific harms to B.K.T. Applying the *Fry* analysis to the claims made in the Complaint reveals that the heart of the Complaint is the failure of USD 259 to implement the IEP. That failure led to B.K.T. being denied a FAPE. Therefore, before this claim can be brought in federal court, the administrative procedures of the IDEA must be exhausted.

### B. Plaintiffs Must Exhaust the IDEA Administrative Process

As discussed above, before plaintiffs can file suit in federal court for denial of a FAPE, they must have participated in an impartial due process hearing and unsuccessfully appealed. If they have not exhausted those procedures, and an exception does not apply, a federal court does not have subject matter jurisdiction.[30] The exhaustion process serves important purposes that provide reviewing courts a fuller understanding of the facts, and agencies the opportunity to address the issues raised.[31]

Plaintiffs do not allege that they have exhausted the administrative procedures available to them; instead they assert exhaustion does not apply. The exhaustion requirement must be satisfied when the "relief" sought is "relief that is also available under [the IDEA]."[32] Here, Plaintiffs seek monetary damages and, because monetary damages are not "relief" that can be granted through

---

[30] *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002) (citation omitted).

[31] *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 814 (10th Cir. 1989).

[32] 20 U.S.C. § 1415(*l*).

the IDEA,[33] they contend exhaustion is not required. The Court in *Fry* makes clear it does not answer the precise question of whether seeking monetary damages, or other relief not available through the administrative process, can bypass the exhaustion requirement.[34] However, it cautioned against "artful pleading" that could be used to bypass the requirement.[35] The Tenth Circuit shares this aversion; it considers "available" relief to mean relief available for the events of which the person complains, not necessarily the relief the person prefers or seeks.[36] That is to say, if a complaint alleges that the plaintiff has been denied a FAPE—regardless of the relief that is sought—the exhaustion requirement must be met.

Although this case does not appear to be one of "artful pleading," exhaustion nevertheless is required. Plaintiffs allege their daughter has suffered psychological and emotional harm because of the school's failure to follow the IEP; they therefore request monetary damages to remedy that harm. While it is true that an officer overseeing a due process hearing would be unable to provide the monetary relief requested, an officer could provide *some relief* were they to find B.K.T. was denied a FAPE.[37] That relief might take the form of compensatory education,[38] or private school

---

[33] *See Cudjoe*, 297 F.3d at 1066 (finding that money damages are not ordinarily available in administrative hearings for IDEA claims); *see also Muskrat*, 715 F.3d at 785.

[34] *Fry*, 137 S. Ct. at 752 n.4; *see also id.* at 754 n.8.

[35] *Id.* at 755.

[36] *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015) (citation omitted).

[37] *Fry*, 137 S. Ct. at 754 ("Suppose that a parent's complaint protests a school's failure to provide some accommodation for a child with a disability. If that accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief.").

[38] *See Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717-18 (3d Cir. 2010) (defining compensatory education as a judicially created remedy with the aim to make students whole by requiring the district to fund additional education when a student was denied a FAPE); *see also Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1125 (10th Cir. 2008) (discussing that compensatory education may be awarded when a student has been substantively denied a FAPE) (citation omitted); *see also Miener ex rel. Miener v. Mo.*, 800 F.2d 749, 753 (8th Cir. 1986) (finding that future compensatory education is equivalent to retroactive reimbursement because it "merely requires [the state entity] to belatedly pay expenses it should have paid all along") (quoting *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370-71 (1985)); *see also* 34 C.F.R. § 300.151(b) (mandating that in resolving

tuition reimbursement.[39]  Because relief *of any sort* was available, Plaintiffs were required to exhaust the administrative process even though the specific remedy they seek could not have been granted.

When the administrative process would be futile as a legal or practical matter, exceptions can be made to the exhaustion requirement,[40] but these exceptions have not been argued by Plaintiffs and, regardless, do not appear to apply.  As none of the exceptions have been argued, Plaintiffs are required to exhaust the administrative procedures of the IDEA.

Plaintiffs' Complaint alleges USD 259's failure to accommodate B.K.T.'s needs ultimately resulted in her injury and accompanying trauma.  This Court finds that the heart of the Complaint concerns the denial of a FAPE because it was USD 259's failure to follow the IEP which resulted in B.K.T.'s injuries.  Though Plaintiffs seek monetary damages that are not available as relief through the IDEA administrative process, because there was relief available under that process, Plaintiffs are required to meet the exhaustion requirement.  Because Plaintiffs failed to exhaust the administrative procedures the IDEA makes available to them, this Court does not have subject matter jurisdiction over their claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is **GRANTED.**

---

a complaint for failure to provide appropriate services, the State Education Agency must provide corrective action that could include compensatory services).

[39] *See Sch. Comm. of Burlington*, 471 U.S. at 369-70 (identifying that the IDEA provides for private school reimbursement as appropriate relief when placement in a public school is inappropriate).

[40] *See Honig v. Doe*, 484 U.S. 305, 326–27 (1988) (quoting *Smith*, 468 U.S. at 1014 n.17).

**IT IS SO ORDERED.**

This case is closed.

Dated this 27th day of June, 2022.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE